DA 22-0563

FILED

04/25/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0563

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 70N

IN RE THE PARENTING PLAN OF:
S.N.,

ROBERT NEWHOUSE,

      Petitioner and Appellee,

MARION KEEZER, k/n/a MARION SCOTT

      Respondent and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
                 In and For the County of Park, Cause No. DR-2022-90
                 Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jami L. Rebsom, Jami Rebsom Law Firm PLLC, Livingston, Montana

      For Appellee:

          Karl Knuchel, Karl Knuchel, P.C., Livingston, Montana

                          Submitted on Briefs:  March 1, 2023

                                      Decided:  April 25, 2023

Filed:

_____
                     Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Marion Scott (Scott) appeals from the Order Quashing Temporary Order of Protection issued by the Sixth Judicial District Court on September 23, 2022. We affirm.

¶3 In 2005, Scott and Robert Newhouse (Newhouse) started a relationship. In 2007, Scott gave birth to the couple's first child, S.N. Within a year of S.N.'s birth, the couple disputed custody. That dispute has been ongoing in the Sixth Judicial District Court for more than a decade. The following is an incomplete summary of the extensive interactions between the parties and the Sixth Judicial District Court.

¶4 On August 21, 2008, Newhouse filed a Petition for Parenting Plan in the Sixth Judicial District Court. The matter was assigned to Judge Swandal. On September 8, 2008, Scott filed a Response to Petition for Parenting Plan. On August 31, 2009, the court issued an Order Regarding Child Support. On May 7, 2010, the court issued a Stipulation and Order Regarding Visitation. On October 12, 2012, the court issued an Order to Withhold and Deliver Child Support. On December 27, 2012, the court issued an Order to Show Cause Hearing set for February 4, 2013, in response to a motion to amend the parenting plan. In early 2013, Judge Gilbert started presiding over the matter. On November 15,

2013, the court issued an Order for Parenting Evaluation. On May 30, 2014, the court issued an Ex Parte Order Granting Parenting Time. On July 8, 2014, the court issued an Order to Release Police Reports to Parenting Evaluator. On June 4, 2015, the court received a Verified Emergency Motion for Modification of Parenting Plan and the court issued an Ex Parte Order for Temporary Parenting and Order to Show Cause Hearing set for June 18, 2015. On June 18, 2015, the court issued an Order approving a Stipulation for Interim Parenting Time. On July 23, 2015, the court received a Motion to Convert Interim Parenting Plan Into Final Parenting Plan. On August 10, 2015, the court issued a Temporary Ex Parte Order Extending Interim Parenting Time and set a hearing for August 27, 2015. On September 18, 2015, the court issued its Findings of Fact, Conclusions of Law, and Order Regarding Final Parenting Plan and changed the status of the case to "Closed."

¶5 In a change from the first eight years of S.N.'s life—during which he primarily resided with Scott, the Final Parenting Plan placed S.N. in Newhouse's primary residential care. S.N. initially lived with Newhouse in Bahrain, where he was stationed while on active duty with the military. While there, S.N. voiced suicidal thoughts and underwent psychological evaluation. S.N. remained in Newhouse's care when Newhouse returned to the United States.

¶6 On April 11, 2017, Newhouse filed an Ex Parte Motion for Interim Parenting Plan. On April 13, 2017, the court issued an Order Regarding Petitioner's Ex Parte Motion for Interim Parenting Plan. On December 21, 2018, the court issued an Order upholding a Stipulation Regarding Order of Protection and Appointment of Guardian Ad Litem, and

3

dismissed a Temporary Order of Protection against Scott. On August 19, 2019, the court received a motion from Newhouse to modify the Parenting Plan. On September 30, 2019, the court issued an Order to Show Cause and set a hearing for November 26, 2019. On October 1, 2019, the court changed the status of the case to "Active." On November 27, 2019, the court issued an Interim Order. On December 19, 2019, the court issued its Findings of Fact, Conclusions of Law, and Interim Parenting Order. On January 22, 2020, the court issued an Order Amending the Court's Findings of Fact, Conclusions of Law, and Interim Parenting Order and an Order Appointing Guardian Ad Litem. On August 13, 2020, the court changed the status of the case to "Closed." On May 24, 2021, Scott filed a Motion to Modify Interim Parenting Plan. On June 14, 2021, the court issued an Order to Mediate. On August 19, 2021, the court received the Mediator's Report. On August 24, 2021, the court issued an Order Scheduling a Hearing for September 8, 2021.

¶7     On October 15, 2021, the Sixth Judicial District Court issued an order following the hearing on Scott's May 24, 2021 Motion to Modify Interim Parenting Plan. The order mandated Newhouse take several actions including sharing the contact information of S.N.'s counselor with Scott, adding Scott as an emergency contact on S.N.'s school records, permitting S.N. to spend certain holidays and breaks with Scott, and participating in family therapy with Scott and S.N. The order also directed the parties to submit proposed findings of fact and conclusions of law to the court prior to November 5, 2021. On January 4, 2022, the court issued its Findings of Fact, Conclusion of Law, and Interim Order. Based on its determination that Scott's living situation appeared to have become more stable, the court concluded that S.N. should spend more time with Scott. The court ordered that S.N.

4

spend his summer vacation in the following pattern: three weeks with Scott, one week with Newhouse. The court maintained its position that Newhouse was in the best position to provide S.N. with continuity and stability of care as his primary residential parent.

¶8 Pursuant to the summer schedule set by the District Court's January 4, 2022 order, on August 6, 2022, Newhouse picked up S.N. from his mom and took him to Newhouse's home in Idaho. On August 13, 2022, Newhouse alleges that S.N. snuck out of his house and "disappeared without a trace." Newhouse asked for Scott's cooperation in searching for S.N. He asserts that she refused to help. Newhouse sought designation from the court that he was S.N.'s sole custodian so that he could better marshal resources in his search for S.N.

¶9 On September 2, 2022, while Newhouse continued to search for S.N., Scott filed a Petition for Temporary Order of Protection and Request for Hearing (Petition) with the Eighteenth Judicial District Court, Gallatin County. Scott alleged in the Petition that Newhouse would cause her harm unless the court issued a temporary order of protection. The Gallatin County Standing Master immediately granted the Petition and set a hearing for September 20, 2022.

¶10 On September 9, 2022, Newhouse filed an Emergency Motion in the ongoing proceeding in Park County for Temporary Designation of Sole Custodial Status, as well as an affidavit in support of that motion.[1] The District Court issued an order on the same day

---

[1] Newhouse's affidavit repeated several of the facts adopted by the District Court, but also expanded upon the events that led to S.N.'s allegedly running away. According to Newhouse, S.N. called him on July 29, 2022, asking Newhouse to pick up S.N. from Scott's house because S.N. heard Scott discussing plans to hide S.N. at the home of her father, Ian Scott (Ian). On August

5

granting Newhouse's motion and stating that a hearing would be set if Scott filed an objection.

¶11    Also on September 9, 2022, Newhouse filed in Gallatin County Notice of the Park County Dissolution Action and requested transfer of the file to the Sixth Judicial District Court. On September 19, 2022, the Eighteenth Judicial District Court issued an order to transfer the file. The court reasoned that the pending parenting proceeding in the Sixth Judicial District Court sufficed as a showing of good cause. The order specified that the court's September 2, 2022 Temporary Order of Protection would continue in full force and effect until further order of the Sixth Judicial District Court. The order vacated the previously set September 20, 2022 hearing.

¶12    On September 22, 2022, Newhouse filed a Motion to Quash the Temporary Order of Protection. On September 23, 2022, the Sixth Judicial District Court quashed the Temporary Order of Protection without a hearing. Rather than object to the September 9, 2022 Order granting Newhouse's Emergency Motion for Temporary Designation of Sole

---

3, 2022, Newhouse claimed to have received a text from S.N. asking that Newhouse permit S.N. to stay another week with Scott. On August 4, 2022, Newhouse told S.N. that S.N. could not stay an extra week because of the concerns he had for S.N.'s wellbeing as a result of the July 29, 2022 call. On August 6, 2022, Newhouse arranged for a civil stand-by outside the Bozeman Police Station to facilitate S.N.'s transfer from Scott's care to Newhouse's care. Scott brought S.N. S.N., according to Ian, had recently threatened to attempt suicide. This information, combined with S.N.'s demeanor and possession of a knife at the time of the transfer, motivated Newhouse to take S.N. to Bozeman Deaconess Hospital to undergo a psychological evaluation. Following the evaluation, Newhouse followed the recommendation of hospital staff to take S.N. to Idaho. Newhouse then arranged for S.N. to start a partial in-patient treatment program on August 15, 2022. On August 13, 2022, Newhouse alleged that S.N. ran away from Newhouse's home. He reported that he contacted several law enforcement agencies to search for S.N. and that Scott, upon being contacted by an advocate for missing persons, refused to help those searching for S.N. Due to Scott's refusal, Newhouse asserted that no law enforcement agency would participate in the search for S.N.

6

Custodial Status and request a hearing, Scott has appealed the court's dismissal of the Temporary Order of Protection.

¶13 Scott alleges that the Sixth Judicial District Court abused its discretion and violated Montana law by quashing the Temporary Order of Protection without a hearing. Newhouse argues that the court did not have a statutory obligation to hold a hearing and contends that the court did not abuse its discretion given the court's familiarity with the custody dispute. We note that Scott could have had a hearing by filing an objection to the designation of sole custody in response to the emergency motion filed by Newhouse.

¶14 In *Schiller v. Schiller*, 2002 MT 103, ¶ 25, 309 Mont. 431, 47 P.3d 816, this Court held that upon a showing of good cause, a district court may continue, amend, or make permanent a temporary order of protection in compliance with § 40-15-202(1), MCA. We will not overturn a district court's decision to continue, amend or make permanent an order absent an abuse of discretion.

¶15 Scott's interpretation of § 40-15-202(1), MCA, which would require a district court in all cases to hold a hearing on a temporary order of protection, excessively narrows the discretion of district courts. Scott cites this Court's decision in *Keller v. Trull*, 2007 MT 108, 337 Mont. 188, 158 P.3d 439, in support of her interpretation, but Scott failed to acknowledge that the *Keller* Court affirmed a district court's discretion to decide whether to continue, amend, or make permanent an order of protection. *Keller*, ¶ 7.

¶16 The District Court did not abuse its discretion in quashing the Temporary Order of Protection. Two weeks earlier, on September 9, 2022, the court had issued an order granting Newhouse's Emergency Motion for Temporary Designation of Sole Custodial

Status.  The court's order quashing the Temporary Order of Protection was consistent with the September 9, 2022 order.  The court had extensive knowledge of the facts of the custody dispute and thoroughly considered that record prior to issuing its order.

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE